PINE BLUFF, SHERIDAN & SOUTHERN RAILWAY COMPANY
v. LEATHERWOOD.

Opinion delivered April 12, 1915.

1. MASTER AND SERVANT—INJURY TO SERVANT—DUTY TO INSPECT FOR DEFECTS.—Plaintiff, a locomotive fireman, was injured by the bursting of a defective hose pipe. It was the engineer's duty to inspect the same. *Held*, mere proof that the engineer was an experienced engineer, and that he made repeated inspections, will not show that the defendant company was not liable in letting the hose get into a defective condition.

2. RELEASE—DUTY OF COURT TO CONSTRUE.—Where a release from liability is in writing it is the duty of the court to construe the same.

3. RELEASE—BINDING EFFECT.—When a release from liability is unambiguous in its terms, and the plaintiff signed it without any deceit or fraud being practiced upon him, he is bound by it.

4. RELEASE—CONSTRUCTION—DUTY OF COURT.—It is the duty of the court to construe a written release from liability, and it is error to leave to the jury the duty of construing its terms to determine whether it covered in its terms the element of personal injury or only the element of loss of time.

5. APPEAL AND ERROR—INSTRUCTIONS—HARMLESS ERROR.—Appellant can not complain of the giving of an erroneous instruction requested by appellee, where he has requested the giving of an instruction involving the same erroneous proposition of law.

6. DAMAGES—PERSONAL INJURIES—PERMANENCY OF INJURY—HARMLESS ERROR.—Although it is erroneous to submit the issue of the permanency of plaintiff's injury, where there is no proof to warrant the same, the error will be held harmless, when the verdict is so small as to show that that element of damage was not considered by the jury.

Appeal from Grant Circuit Court; *W. H. Evans,* Judge; affirmed.

*W. D. Brouse* and *John L. Hughes,* for appellant.

1. This case falls within the rule that the servant assumes the usual and ordinary risks incident to his employment. 41 Ark. 382, 383; 104 Ark 489.

If the hose was attached in a defective manner, it was necessarily patent to the appellee, and he assumed the risk. 58 Ark. 125; 65 Ark. 98.

He was presumed to know of such dangers and risks as he had the opportunity to know of, and, having such opportunity, if he failed to inform himself, he can not recover for the resulting injury.

2. Both the superintendent and the engineer, who were men of long experience as locomotive engineers, had inspected the attachment, and thought it safe; and the engineer had inspected it every time he stopped, five or six times a day. This was certainly all the inspection that could be required, because the defect in the appliance, if any, must have been such as a reasonably careful inspection would disclose. 20 Am. & Eng. Enc. of L. 90, and cases cited.

3. Instruction 7 was not the law of the case and was misleading and prejudicial. It was the duty of the court to construe the release, and to instruct the jury that if appellee signed it, he was bound by it and could not recover. 78 Ark. 574; 105 Ark. 213; 1 Greenleaf on Ev. (16 ed.), § 277.

*D. D. Glover,* for appellee.

1. The connection was made by the engineer under the orders and directions of the superintendent before appellee went to work there. He knew nothing of its danger until he was injured. It is well settled that the servant does not assume the risk of dangers arising from or consequent upon the negligence of the master, but he has the right to assume, and act upon the presumption, that the master has exercised due care and diligence for his protection. 93 Ark. 93; 77 Ark. 367; *Id.* 463; 79 Ark. 53; 87 Ark. 396; 85 Ark. 503; 89 Ark. 424; 95 Ark. 291; 90 Ark. 223; 98 Ark. 227.

2. If appellee signed the release it would not bar this action, because it shows on its face that it was for *loss of time and damages arising therefrom,* i. e., loss of time.

The questions, whether the appellee signed the release or not, and whether, if he signed, it was for loss of time only, and not for personal injuries, were questions for the jury. 89 Ark. 368. It is when the terms of a written contract are undisputed that it is the province of the court to construe it. 101 Ark. 469.

McCulloch, C. J. This is an action instituted by appellee to recover damages on account of injuries received while working in the service of appellant as fireman on its railroad. There was a rubber hose attached to the injector pipe and appellee was using it for the purpose of wetting the coal in the tender so as to keep down the coal dust, and the hose, on account of the insecure connection with the pipe, would not stand the pressure, and blew off, causing a stream of hot water to be thrown against appellee's leg. He was severely scalded below the knee, and was confined to his house about ten days, suffering considerable pain in the meanwhile, and was incapacitated from work for a still longer period of time. Appellant's manager paid appellee the sum of $24, and introduced in evidence a contract in writing purporting to release the company from all liability for the injuries received. Appellee admitted that the sum of money named above was paid to him for thirteen days of his time lost after the injury, but denied that it was to cover any other elements of damage, or that he signed any writing of any kind or agreed to accept the sum in full compensation of all of his injuries. The case was tried before a jury and a verdict was rendered in appellee's favor assessing damages in the sum of $100.

It is insisted in the first place that the evidence was not sufficient to sustain the verdict in that there was no negligence proved, and that the appellee himself was guilty of negligence in failing to inspect the defective ap-

pliance which caused his injury. It appears from the
evidence that the piece of hose was about four feet long
and was connected with the pipe back under the side of the
engine at an inconspicuous place. The piece of hose was
attached for use especially in watering the coal in the ten-
der so as to keep the coal dust from flying. The engineer
applied to his superior for a piece of hose and a clamp
with which to attach it to the pipe, and when it was fur-
nished to him, the clamp was too large. The manager
told the engineer to put in an additional strip of rubber
so as to make the connection secure, and the evidence ad-
duced by appellant tends to show that the engineer fre-
quently inspected the connection, and that there was no
negligence in leaving it in that condition. We think there
was enough evidence to warrant the inference that there
was negligence in the manner in which the hose was at-
tached. It is conceded that the clamp was too large, and
the jury might properly have found that there was negli-
gence in using that kind of a clamp, or that there was
insufficient stripping to make the hose large enough to
fit the clamp. The defect was, too, of such a character
as to warrant the inference that there was negligence in
not making proper inspection to discover its condition.
The engineer testified that he made frequent inspections,
but the jury might have found that his inspections were
not sufficiently searching and accurate to discover the de-
fect. The duty devolved upon the master to exercise ordi-
nary care to make this appliance reasonably safe for the
use intended. It can not be said that the appliance was
solely for the personal use and convenience of the engi-
neer and fireman, though it is true that it added to their
comfort in keeping down the coal dust. It was, after all,
one of the appliances about the engine which was con-
sidered necessary in the performance of the duties of the
servants in charge of the engine. Nor can it be said that
the defect was such an obvious one that the appellee was
bound to take notice of its condition. The duty of inspec-
tion was that of the master, and the appellee, as fireman,
was not bound to search for hidden defects, but was only

compelled to take notice of those which were open to observation. We think the evidence was sufficient, and that the verdict ought not to be set aside on that ground.

It is claimed that some of the instructions given at the request of plaintiff on the subject of the master's duty were erroneous in ignoring the question of release, but the answer to that contention is that those instructions covered different subjects and could not very well have been understood by the jury as excluding the defense predicated on the release inasmuch as numerous instructions were given on the latter subject at the request of plaintiff, and also at the request of defendant.

(1) Appellant asked the court to give the following instruction:

"9. You are instructed that if the engine upon which the hose was attached was inspected some five or six times a day by the engineer in charge thereof, and that he was an experienced engineer, and no faulty attachment was discovered, this would be all the inspection that a reasonably prudent man would do, and even if the plaintiff was injured by the hose becoming detached, then you are told that this would be a mere accident which the defendant could not reasonably anticipate, and your verdict will be for the defendant." The court refused to give the instruction as requested, but modified it so as to tell the jury that it was proper to consider the frequent inspections made by the engineer in determining whether or not there was negligence on the part of the master. The instruction as requested was erroneous for the reason that it told the jury as a matter of law that, because the inspections were made by an experienced engineer, there could be no negligence in the case. The jury might have found that the engineer made inspections, but that notwithstanding, he was guilty of negligence in failing to discover the defect, and that the master was responsible. That was one of the master's duties, and if the servant to whom it was delegated made an insufficient inspection, the master was liable for his negligence. After all, it was a question for the jury to determine whether or not the

defect was of such a character as should have been dis-
covered upon proper inspection, and the fact that re-
peated inspections were made is not conclusive that there
was no negligence. The court was correct, therefore, in
making the modification in the instruction.

(2-3-4-5)  The following instruction on the subject
of release was given over appellant's objection, and error
is assigned in that regard: "7. You are instructed that
if you believe from the evidence in this case that the
plaintiff signed a receipt in full for loss of time only, and
for all damages arising from loss of time only, caused by
the injury, and not for his personal injuries received, this
would not prevent the plaintiff from recovering in this
case, if you find that plaintiff was injured by the negli-
gence of the defendant while the plaintiff was in the exer-
cise of due care of his own safety." This instruction was
erroneous in that it submitted to the jury for determina-
tion the question whether the release embraced all the ele-
ments of damages set forth in the complaint. The release
was in writing, and it was the duty of the court to con-
strue it. Our examination of it convinces us that it is un-
ambiguous and covers all the damages, and if appellee
signed the release for the consideration named therein,
and no fraud or deception was practiced, he is bound by
it. Appellee admitted that he received the amount named
for his loss of time up to that date, but denied that he
signed any release then or at any other time. If, as he
claimed, he did not sign the release and only accepted the
amount named as compensation for a particular element
of his damages, then he was not bound by the settlement.
*St. Louis, I. M. & S. Ry. Co.* v. *Smith,* 82 Ark. 105. The
court ought to have construed the release, and told the
jury that if plaintiff signed it in consideration of the sum
named, he was bound by it and could not recover, and it
was erroneous to delegate to the jury the duty of constru-
ing the terms of the release and determining whether or
not it in fact was intended to cover the element of per-
sonal injuries other than loss of time. Appellant can not
complain, though, for the reason that it asked and the

court gave, an instruction submitting that issue to the jury. The court gave the following instruction at appellant's request: "If you find from the evidence that the plaintiff went to the office of the defendant and agreed with the defendant, through its officers and agents, that if the defendant would pay the plaintiff the sum of $24.40 in full settlement for any and all claims that he had or might have by reason of any injuries he sustained while firing defendant's engine No. 50, and you find that the defendant, through its agents, did pay the plaintiff the sum of $24.40 with this understanding, and that it was the intention of both the plaintiff and the defendant at the time that this amount should be in full settlement for all claims for damages, and that plaintiff accepted this voucher and thereafter signed and received the money on the same, then, gentlemen of the jury, you are told this would be a full settlement between the parties, and your verdict will be for the defendant." It will be observed that this instruction leaves it to the jury to determine whether or not the sum of $24.40 was paid with the understanding and intention that it should be in full of all claim for damages. In other words, it submitted the same question to the jury that appellant now says was erroneously submitted in instruction No. 7, asked by appellee, and appellant can not complain of the ruling of the court in which it acquiesced by asking a similar instruction. *Fort Smith Light & Traction Co.* v. *Barnes,* 80 Ark. 169; *St. Louis, I. M. & S. Ry. Co.* v. *Coke,* 118 Ark. 51.

(6)   Error is also assigned in submitting to the jury the question of the permanency of the injury, it being contended that there was no evidence tending to show that the injury was permanent. It is true that the injury was not permanent, except that there will probably be a scar on the lower part of appellee's leg, and it was improper to submit to the jury that question; but the jury assessed a very small amount of damages and the testimony as to pain and suffering is abundantly sufficient to warrant a finding for the amount which the jury awarded. It is manifest, therefore, that the jury did not allow any-

thing for permanent injury, and the error in submitting that issue was not prejudicial.

We are of the opinion that upon the whole there was no prejudicial error in the matters brought to our attention in the argument, and that the judgment should be affirmed. It is so ordered.