CARRIE P. ALGEO, APPELLANT, v. J. A. STEWART, RESPONDENT.*

Kansas City Court of Appeals.   June 11, 1928.

*Corpus Juris-Cyc References: Bills and Notes, 8CJ. section 854, p. 614, n. 45; section 1317, p. 1012, n. 77; section 1355, p. 1041, n. 34; Evidence, 22CJ, section 623, p. 535, n. 44; Trial, 38Cyc, p. 1340, n. 98; p. 1785, n. 90.

*Clarence A. Barnes* for appellant.

*Dinwiddie & Sapp* for respondent.

ARNOLD, J.—This is a suit to recover an alleged unpaid balance on a promissory note.

The petition charges that on February 15, 1920, defendant executed his negotiable promissory note for $5000, payable one year after date with interest from date at seven per cent compounded annually; that defendant claimed to have paid the same, both principal and interest and said note was delivered to him by the bank which was the custodian of it, but that the note has not been paid although defendant is in possession thereof; that the note was delivered to defendant through error and on the representation of defendant that it had been fully paid; that because said note is now in possession of defendant, plaintiff cannot file the same nor attach it to the petition; that said note matured on February 15, 1921, and that defendant has made the following payments thereon:

$ 353.67 on Nov. 7, 1921.
250.00 on Feb. 20, 1922.
350.00 on Mar. 3, 1923.
150.00 on Mar. 14, 1924.
200.00 on April 22, 1924.
2500.00 on June 7, 1924.
1000.00 on Oct. 11, 1924.
1200.00 on Mar. 17, 1925.
220.11 on June 24, 1925.

That the balance due on said note on May 16, 1927, is $557.87, which defendant has failed and refused to pay. Judgment is sought for this amount with interest. The petition is verified by plaintiff.

The answer admits the execution of the note as alleged in the petition but avers that on or about June 24, 1925, and prior to the commencement of this action, defendant fully paid and discharged said indebtedness, and that on or about October 19, 1925, said note was delivered to defendant by plaintiff or her agent, the Exchange National Bank of Columbia, Mo.

The reply was a general denial. A timely motion filed by plaintiff to require defendant to produce the note in question to be used in evidence was sustained by the court. Upon the issues thus made the cause was tried to a jury resulting in a verdict for defendant and judgment was entered accordingly. Motion for new trial was ineffectual and plaintiff appeals.

The record discloses that plaintiff resides in San Diego, Calif., and defendant in Columbia, Boone County, Mo.; that for a number of years from February, 1920, and up to the filing of this suit, defendant handled considerable money for plaintiff; that he sold to her promissory notes of other persons and in a number of instances gave his own note for the amount and attached the notes sold as collateral. It appears that on February 15, 1920, defendant gave plaintiff his note for $5000 (the note in suit), and gave divers notes as collateral thereto; that he paid plaintiff various sums on the note in question, some payments being made direct to her but usually these payments were by deposit to plaintiff's credit in the Exchange National Bank at Columbia, this being done at the request of plaintiff; that she kept her money in an account at said bank and authorized the bank to credit the payments on the note in issue herein. Defendant claims the balance of said note finally was paid on or about June 24, 1925.

Further it appears from the evidence that the note in question was in the actual possession of plaintiff at Gridley, Ill., until sometime during the year 1922, when it was placed in the Exchange National Bank at Columbia, Mo., and that in the following year the bank was made custodian thereof and agent for plaintiff to collect it and credit the payments thereon. Plaintiff retained such possession of the note after it was paid until in March, 1926, when it was surrendered to defendant by said bank.

The testimony shows that about October 10, 1925, plaintiff computed the note, decided it had been fully paid and directed the bank to cancel and deliver the same to defendant, the cashier having refused to surrender the note until authorized by plaintiff so to do. As soon as the note came into the hands of defendant it was destroyed. About two years thereafter plaintiff filed this suit, claiming a balance due thereon as above stated and that the note had been canceled and surrendered through mistake in the credits thereon; that the credit of $353.67 was the difference between the amount paid and the amount called for in a note sold by defendant to plaintiff; that the $220.11 item was the remainder of a deposit of $825.11 made by defendant to plaintiff's credit in the Exchange National Bank, $500 of which was applied on "the Bailey note" which defendant had sold to plaintiff, and $105 applied on another note called "the Clyde Stewart" note and represented three monthly installments on said note, thus leaving $220.11 for credit on the note in issue; that all the other credits were for money deposited by defendant to plaintiff's credit in the bank.

Another matter of dispute arose as follows: Plaintiff wired defendant from California for $1500. Defendant replied by letter which was misdirected but later was received by plaintiff. On March 9, 1925, defendant wired plaintiff to check on the bank for $1500, the amount requested by her in the telegram; that plaintiff believed at

that time that defendant had deposited the $1500 to her credit, while in fact he had deposited $1200; therefore the credit on the note was $300 short; that plaintiff had some other funds on deposit in the bank and her check for $1500 was honored; that had the $1500 been deposited, the amount due on the $5000 note would have been approximately $220.11. In a letter to plaintiff dated June 29, 1925, defendant stated $220.11 was the balance and interest due on the $5000 note "as per your figures." On October 10, 1925, plaintiff wrote the cashier of the bank:

"Judge Stewart has paid all of his note for $5000 and all interest on it, I think, so you can give him his note . . ."

Plaintiff claims that on learning, later, that only $1200, instead of $1500, was deposited by defendant, this suit was instituted. Defendant testified he had told plaintiff that when she was in need of money he would deposit same to her credit. The evidence shows defendant knew the *status* of plaintiff's account with the bank at all times and that his statement to her that she could check on the bank for $1500 was not to say he had deposited that amount to her credit but to tell her a check drawn by her for $1500 would be honored.

At the trial defendant exhibited four checks for $100 each which he claims were applied on the $5000 note. The testimony shows one of these checks, dated November 24, 1920, deposited by defendant to plaintiff's credit, was to cover an overdraft of $89.65, of plaintiff at the bank and that it was deposited at the request of the bank; the second, dated November 15, 1920, was also so deposited; the third, dated June 7, 1921, defendant stated was an advancement of interest and was paid on request contained in a letter in evidence written by plaintiff from Gridley, Ill., to defendant. Plaintiff claimed these four checks were to be applied on other notes and other items between the parties and that they were so applied.

The testimony was sharply conflicting on many material items, and at times witnesses on both sides became more or less confused in giving details of the numerous transactions between the parties. Over the objections of plaintiff, W. E. Smith, cashier of the Exchange National Bank, was permitted to testify that plaintiff's account at the bank was overdrawn in the amount of $89.65 on November 24, 1920, at the time defendant deposited $100 to plaintiff's credit. The admission of this testimony is assigned as error because foreign to any issue in the case. It is not disputed that at all the times involved in this suit said Smith was cashier of the bank; that the deposit of $100, in fact, was credited to plaintiff's account. Neither is it disputed that at various times defendant deposited money to plaintiff's credit in said bank and that the bank was authorized to accept such deposits. The cashier, as it appears, was testifying from records wherein plaintiff's account was kept. The point to which the testimony applied was

as to how the various payments claimed by defendant were made and it was in evidence that he had been making deposits to plaintiff's account in order to keep it from being overdrawn. The testimony complained of went directly to the issue of whether or not this payment was made and how and why it was done. It was not denied that the bank was plaintiff's agent, nor that the deposit was received by the bank for plaintiff. We held in Road Machinery Co. v. Bank, 255 S. W. 565, that the authority of an agent need not be shown by direct evidence but may be proved by the habit and course of business of the principal, and authority may be inferred when it appears the agent had repeatedly performed such acts as the one in question and which the principal has ratified. We also held that when the other evidence does not conclusively show the agent's authority its admission over objections is reversible error. In the case at bar the agency of the bank is admitted. We think the admission of the evidence was proper. [Krause v. Spurgeon, 256 S. W. 1072; Lyell v. Cox, 245 S. W. 343, cases cited by plaintiff.]

It is urged the court erred in admitting in evidence over plaintiff's objection defendant's exhibit 5, being a letter from plaintiff to defendant from Gridley, Ill., December 6, 1921, in which plaintiff states her need for cash and asks defendant to pay some interest in advance. The reason assigned for the charge of error is that the letter did not tend to throw light on any issue involved and was written more than three months after three of the checks introduced in evidence were deposited. The declared purpose for which the letter was introduced was to establish the fact that plaintiff was at Gridley, Ill., at the time defendant sent her the $100 check through the mail. It was admitted by plaintiff that she had the $5000 note with her in Gridley at the time. The letter tended to corroborate defendant's statement that plaintiff was in Gridley at the time he mailed this particular check and it was admissible for that purpose. The court was not asked to limit its consideration to the purpose for which it was offered and if it was properly admitted for any purpose under the circumstances, its admission was not error.

The court permitted defendant to state he had paid all of the principal of the $5000 note and plaintiff argues this was a conclusion of the witness and was prejudicial error, citing Dorroh v. Wall, 297 S. W. 705, an opinion by the Springfield Court of Appeals. In that case the defendant was permitted to testify that he had paid the bill in question and did not owe any items of the account. This was held to be a conclusion. This ruling does not apply to the situation in the case at bar for the reason that the payments by defendant were admitted to have been received by plaintiff. The point in dispute is as to whether the payments were properly applied to the liquidation of the note in suit. There was no error in this respect.

Defendant was permitted to testify that the note sued on was a demand note and plaintiff assigns this as error because it tended to contradict defendant's own pleading and the issues raised by the pleadings and injected a new issue into the case. Since the issue in the case was whether or not the note had been paid and not the particular form of the note, no new question was presented by the testimony complained of and this point is ruled against plaintiff.

It is charged the court erred in admitting in evidence defendant's exhibits 7 and 8 which were checks deposited by defendant in the bank to plaintiff's credit, because plaintiff's name was indorsed thereon by another, and there was no showing of authority so to indorse them. We think this position of plaintiff untenable because she admitted having received the deposit for the money specified in the checks and that point was not in issue. The only question was as to the application of the money. There was no error in this respect.

Plaintiff charges error in the giving of defendant's instruction No. 1, because it did not require the jury to find the payments were made to plaintiff or her agent or that defendant directed that they be applied on the note in question and not upon some other indebtedness of defendant to plaintiff; or that there was no other indebtedness; that this was a roving commission to the jury, is not confined to the issues raised by the pleadings and is so drawn as to be misleading as to admitted payments representing the balance due on the note in question. This instruction deals with the admitted payments and tells the jury that if they find any other payments shown by the evidence as having been made prior to June 24, 1925, and that the total amount of such payments represents the balance remaining due thereon on June 24, 1925, then the verdict should be for the defendant. Plaintiff's instruction "B" which the court gave, covered the points which it is insisted should have been included in the instruction complained of and correctly declared the law. Defendant's instruction No. 1 does not go into details and perhaps is not as complete as it might have been, but it correctly declares the law and does not conflict with plaintiff's instruction "B." There was no error in this respect.

. It is also charged the court erred in giving defendant's instruction No. 2, because it is a comment upon the evidence, and the letter to the bank upon which it was based did not unqualifiedly say that the note had been paid, but that she thought it had been and that said instruction transfers the burden of proof of payment from the defendant to plaintiff; that the instruction singled out the facts therein referred to incorrectly and specifically directed the jury's attention thereto, and was erroneous as a comment on the evidence. The said instruction reads:

"The court instructs the jury that if they shall find from the evidence that the plaintiff had, prior to October, 1925, placed the note mentioned in evidence in the Exchange Bank of Columbia, Missouri, and that during said month she advised the cashier of said bank that said note had been paid in full by the defendant, and authorized and instructed him to deliver the same to defendant, then it now devolves upon the plaintiff to prove by a preponderance of the evidence that said note has not been paid in full."

We think the instruction is not a comment on the evidence but that it places the controverted issues before the jury and requires a finding thereon. It points out no particular evidence and makes no comment. The part to which plaintiff most strongly objects is that which places the burden upon plaintiff to prove by a preponderance of the evidence that said note had not been paid in full. Section 909, Revised Statutes 1919, would seem to cover this point beyond dispute, as follows:

"A cancellation made unintentionally, or under a mistake, or without the authority of the holder, is inoperative; but where an instrument or any signature thereon appears to have been canceled, the burden of proof lies on the party who alleges that the cancellation was made unintentionally or under a mistake or without authority."

There is no dispute that plaintiff directed the note to be turned over by her agent to defendant, stating she believed it had been paid in full. The note was turned over to defendant and by him destroyed, as shown by the evidence. We think this constituted a cancellation within the meaning of the statute. The general rule in this respect is stated in 8 C. J. 614, as follows:

"The cancellation of a bill or a note by the holder or with his consent may be effected by the destruction of the instrument, by writing or stamping words or lines on its face, provided the instrument, by its condition, shows that it has been canceled, or by the surrender of the instrument to the party liable after maturity."

Plaintiff cites a number of cases in support of the general rule that the party alleging payment must prove it. An examination of these cases shows they are not in point because in none of them did the question of cancellation or surrender arise, and the rule announced therein was based upon a plea of payment. There was no error in the respect charged. [Cont. Gin. Go. v. Benton, 104 Ark. 367, 149 S. W. 528; Union Bank v. Sullivan, 108 N. E. 558; Morris v. Reyman, 103 N. E. (Ind.) 423.]

The same ruling applies to plaintiff's assignment of error numbered 8, which is directed to the court's refusal to give plaintiff's instruction "C" because it placed the burden upon defendant to show payment. Under the facts in evidence the refusal of this instruction was proper.

Finally it is charged the court erred in refusing plaintiff's proffered instruction "C" and in modifying same and giving it as plaintiff's instruction "B" because (a) it improperly places the burden of proof on plaintiff as to the application of the payments evidence by the four $100 checks, in this, that the burden of proof was upon defendant to show these payments should properly be applied to the note in suit, and if no direction had been made as to their application, the burden was upon defendant to show that he did not owe and was not liable to plaintiff upon any other obligations, or, if there were other obligations, the burden still remained upon defendant to show that such payments had not been properly applied to some of his other obligations. This charge involves the same point we have been discussing and have decided against plaintiff's contention.

We find no reversible error of record and the judgment is accordingly affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.